UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEVEN TEABEAU, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-CV-00703-NCC |
| KILOLO KIJAKAZI,[1] | ) ) |
| Acting Commissioner of Social Security, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Deven Teabeau ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 26), and Defendant has filed a brief in support of the Answer (Doc. 31). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on August 9, 2017 (Tr. 68, 208-23, 232-38). Plaintiff was initially denied on November 29, 2017, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 68, 120-33, 138-47, 164-67).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

After a hearing, by decision dated May 24, 2019, the ALJ found Plaintiff not disabled (Tr. 65-119).  On November 9, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-7).

On June 30, 2020, the district court reversed and remanded the case upon the motion of the Commissioner (Tr. 1146-48).  On July 29, 2020, the Appeals Council issued an order remanding the case to an ALJ (Tr. 1149-55).  After a second hearing, by decision dated March 16, 2021, the ALJ again found Plaintiff not disabled (Tr. 1060-1117).  As such, the ALJ's second decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2020, and that Plaintiff has not engaged in substantial gainful activity since April 20, 2017, the alleged disability onset date (Tr. 1066).  The ALJ found Plaintiff has the severe impairments of major depressive disorder, bipolar disorder, generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and migraine headaches, [2] but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 1066-67).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: no ladders, ropes, or scaffolds; no unprotected heights; no hazardous machinery; limited to a Code 3 or less noise environment; only occasional exposure to extreme humidity (Tr. 1070).  Plaintiff has sufficient concentration to learn, remember, and carry out routine repetitive tasks and make simple routine work related decisions and complete such

---

[2] The ALJ found Plaintiff's asthma was non-severe and that Plaintiff did not have an impairment related to seizures (Tr. 1066-67).

tasks in a timely manner (*id.*). Plaintiff can avoid distractions and work closely with others without distracting them while performing such tasks (*id.*). Plaintiff is able to sustain a full work day and have regular attendance without the need for additional breaks while performing such tasks (*id.*). The ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including grocery bagger, cleaner, and sales attendant (Tr. 1077-78). Thus, the ALJ concluded that Plaintiff has not been under a disability from April 20, 2017, through the date of the decision (Tr. 1078).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises four issues. First, Plaintiff argues that the RFC is not supported by substantial evidence (Doc. 26 at 2). As part of that argument, Plaintiff asserts that the ALJ did not explain how Plaintiff's testimony translates into a limitation to a Code 3 noise level or below and that there is no basis for the limitation (*id.* at 4). Second, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's migraines (*id.* at 5). Third, Plaintiff argues that the ALJ did not properly consider opinion evidence (*id.* at 9). Fourth, Plaintiff argues that the ALJ's decision lacks a proper pain evaluation (*id.* at 13). Because the Court agrees that the ALJ erred in failing to explain the Code 3 noise level or below limitation, the Court will decide that issue alone.

In the ALJ's initial May 24, 2019 decision, the ALJ found that Plaintiff's migraines were a non-severe impairment (Tr. 71) and included a "less than a Code 3 noise environment" limitation in the RFC (Tr. 74).  When the district court reversed and remanded the case upon the motion of the Commissioner (Tr. 146-47), the Appeals Council remanded for resolution of the following issue:

> The Administrative Law Judge did not resolve a discrepancy between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). The residual functional capacity assessment restricted the claimant, in part, to "less than a Code 3 noise environment" (Finding 5). According to the Social Security Administration's Program Operations Manual System DI 25001.001, a "code 3" noise environment is synonymous with the term "moderate." At step 5 of the sequential evaluation, the Administrative Law Judge accepted the portion of the vocational expert's testimony, which found the claimant capable of performing the jobs of mail clerk (DOT # 209.687-026) and cleaner II (DOT # 919.687-014).
>
> According to the DOT, the mail clerk position requires an individual to work in a moderate (Code 3) noise environment. Furthermore, the cleaner II position requires an individual to work in a loud (Code 4) noise environment. The Administrative Law Judge did not ask the vocational expert to resolve the discrepancy between the noise requirements for these positions, as described in the DOT, and the residual functional capacity assessment (Social Security Ruling 00-4p). Further evaluation of the claimant's ability to perform other work in the national economy is warranted.

(Tr. 1151).  The same ALJ issued a second decision on March 16, 2021.  This time, the ALJ found that Plaintiff's migraines were a severe impairment (Tr. 1066) and included a "limited to a Code 3 or less noise environment" limitation in the RFC (Tr. 1070).

Plaintiff argues that this case was remanded for clarification regarding jobs that could be performed with a noise level below 3 and that, in the second decision, rather than have the vocational expert (VE) identify jobs that fit within that limitation, the ALJ changed the limitation to jobs with a noise level of 3 or below, thereby avoiding having to deal with the vocational issues (Doc. 26 at 3-4).  Plaintiff argues that the decision makes no mention of how Plaintiff's testimony about noise exacerbating migraines translated into a limitation to a Code 3 noise level

6

or below and that there is no basis for this limitation and nothing in the file supports this limitation in the RFC (*id.* at 4).  The Court agrees that the ALJ failed to sufficiently explain the change in the noise limitation.

In determining the RFC, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims").  "A summary of the medical record does not fulfill the narrative discussion requirement."  *Pierce v. Saul*, No. 4:19-CV-1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sep. 22, 2020).  The ALJ, however, is not required to make explicit findings for every aspect of the RFC.  *Id.* (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)).

"[T]he ALJ's failures to include a narrative discussion of Plaintiff's RFC, standing alone, do[] not necessarily require remand."  *Murray v. Kijakazi*, No. 4:20-CV-484 PLC, 2022 WL 407140, at *8 (E.D. Mo. Feb. 9, 2022).  "[A]n arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome."  *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) (internal quotations omitted).  However, remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."  *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review); *Pettit v. Apfel*, 218 F.3d 901, 903–04 (8th Cir. 2000) (same).

Here, the ALJ's discussion was insufficient for meaningful appellate review of the noise limitation included in the RFC.  The following evidence was before the ALJ initially and on remand.  In her initial hearing, Plaintiff testified that noise in general, such as talking, not necessarily loud noise, can stimulate a migraine (Tr. 102).  In her second hearing, Plaintiff similarly testified that any noise, any kind of communication, not just loud noise, affects her migraines and makes them worse (Tr. 1098-99).  The November 28, 2017 opinion by state agency medical consultant Dr. David Marty, M.D., included a limitation that "Claimant should avoid even moderate [] exposure to … noise" (Tr. 127).  The only new evidence regarding noise adduced on remand was the February 4, 2021 Headaches RFC Questionnaire completed by Plaintiff's neurologist, Dr. Laurence Kinsella, M.D., in which Dr. Kinsella notes that noise triggers Plaintiff's headaches and makes them worse (Tr. 1365).

In both decisions, the ALJ found Dr. Marty's opinion partially persuasive, but seemed to ignore his noise limitation and, instead, rely on Plaintiff's testimony in crafting the noise limitation in the RFC (Tr. 72, 78, 1076).  On remand, the ALJ did not find Dr. Kinsella's opinion persuasive, but noted that Dr. Kinsella opined Plaintiff's headaches were worsened by noise (Tr. 1076).

Dr. Marty's limitation that "Claimant should avoid even moderate [] exposure to … noise" is consistent with the ALJ's initial "less than a Code 3" noise limitation.  *See* Tr. 1151 (noting a "code 3" noise environment is synonymous with the term "moderate").  This case was remanded specifically because the ALJ did not ask the VE to resolve the discrepancy between the noise requirements for jobs Plaintiff could allegedly perform and the noise limitation in the RFC.  Rather than exploring jobs consistent with "less than a Code 3" noise environment, as Plaintiff emphasizes, the ALJ simply made the limitation less restrictive, increasing it to "a Code

8

3 or less," allowing for a moderate noise environment. The ALJ gave no explanation for the change. Notably, on remand, the ALJ also upgraded Plaintiff's migraines from a non-severe to severe impairment.

"[W]hen an ALJ reviews a nearly identical medical record twice, and reaches two distinct conclusions at two different steps in her analysis, there needs to be an explanation as to why she has altered her original conclusions." *Magee v. Astrue*, No. 4:11-CV-48-RLY-TAB, 2012 WL 1156429, at *6 (S.D. Ind. Apr. 6, 2012). "Without that, the inconsistency draws into question the entire chain of logic leading to her ultimate conclusion." *Id.*; *see also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009) (finding that when an "ALJ failed to explain adequately why he altered his original conclusion that Claimant's depression was a severe impairment[,] the change was not a 'technical writing error' but was, instead, substantive"); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (an ALJ "must build an 'accurate and logical bridge from the evidence to his conclusion'") (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ's failure to explain the change in the noise limitation when the initial limitation conformed to the only specific limitation given by any medical source and the expanded record on remand indicated, if anything, more support for the severity of Plaintiff's migraines, is reversible error. *See Magee*, 2012 WL 1156429 at *5-6 (remanding where the ALJ failed to adequately explain downgrading the plaintiff's obesity and irritable bowel syndrome to non-severe impairments and in turn increasing the level of work from sedentary to light work on remand); *Spelatz*, 321 F. App'x at 691-92 (remanding where the ALJ failed to adequately explain downgrading the plaintiff's depression to a non-severe impairment on remand, finding that the record did not support the non-examining psychologists' conclusions the plaintiff had no more

9

than mild limitations); *Gobert v. Astrue*, No. 2:12-CV-02103, 2014 WL 31254, at *11-12 (W.D. La. Jan. 3, 2014) (remanding where the ALJ failed to adequately explain downgrading the plaintiff's chronic pain and depression to non-severe impairments on remand, finding the ALJ's adverse credibility determination was insufficient to "bridge the gap"); *cf. Fay v. Astrue*, No. 1:10-CV-0920-DML-WTL, 2011 WL 3678322, at *8-9 (S.D. Ind. Aug. 22, 2011) (affirming where the ALJ downgraded the plaintiff's depression and anxiety to non-severe impairments on remand but "provided thorough analysis for her conclusion" in compliance with the remand order); *Harman v. Colvin*, No. 14-CV-00349-KLM, 2015 WL 5693559, at *10 (D. Colo. Sept. 29, 2015) (affirming where the ALJ removed a reading and writing limitation from the RFC on remand but explained the reason for the conclusion). The Court notes this is not a case where the ALJ's analysis was somehow implicit. *Cf. Depover*, 349 F.3d at 567–68 (holding the ALJ did not overlook the possibility that the plaintiff was limited with respect to sitting, standing, or walking when he stated his RFC, but implicitly found the plaintiff was not limited in those functions, even though the ALJ did not articulate a specific finding as to sitting, standing, and walking).

The ALJ's error was not harmless. In the remand hearing, Plaintiff's counsel asked the VE about a hypothetical individual limited to a noise level of two or less (Tr. 1116). The VE found that the limitation "would be a very restrictive addition, especially at that unskilled level, as that would eliminate 94 percent of jobs in the labor market at all skill levels" (*id.*). *See Magee*, 2012 WL 1156429 at *5 (finding the failure to explain downgrading the plaintiff's irritable bowel syndrome "especially concerning" in light of the VE's testimony that it would likely be difficult for the plaintiff to find employment if he had to work very close to a

10

bathroom). Accordingly, on remand, the ALJ must "express a conclusion that is grounded in an evidentiary analysis that provides a logical thought flow." *Id.* at *6.

The Court further notes that an ALJ's opinion may not be substituted for that of a doctor. *See Adamczyk v. Saul*, 817 F. App'x 287, 289–90 (8th Cir. 2020) ("[T]he ALJ cannot 'play doctor,' meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own."); *Gobert*, 2014 WL 31254 at *11 (finding the ALJ erred in rejecting the opinions of the medical experts and substituting his own non-expert opinion as to the severity of the plaintiff's impairments).

Because remand is required for reevaluation of the noise limitation included in the RFC, the Court will not rule on Plaintiff's remaining arguments. *See, e.g., Hirner*, 2022 WL 3153720, at *10. Some comment is warranted on Plaintiff's argument that the ALJ erred in rejecting Dr. Marty's limitation regarding pulmonary irritants (Doc. 26 at 10). The ALJ found such a limitation was "not supported, as claimant did not allege any increase in migraines due to these factors" (Tr. 1076). But Dr. Marty opined that Plaintiff "should avoid concentrated exposure to fumes/odors/dusts *due to asthma*" (Tr. 127) (emphasis added). On remand, the ALJ is advised to consider whether a pulmonary irritants limitation is warranted due to Plaintiff's asthma.

Finally, the Court does advise that, on remand, the ALJ thoroughly consider Plaintiff's well-documented history of migraines, the extent to which she still suffers from migraines notwithstanding the improvement with her Botox treatment, and how her continued migraines may impact the RFC. *See* Doc. 26 at 4-9 (arguing the RFC failed to account for Plaintiff's continued migraines and that the ALJ failed to properly evaluate Plaintiff's migraines); *Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *13 (E.D. Mo. Sept. 22, 2015) (remanding in part because, although the ALJ found that the plaintiff suffered between two and four

11

"migraine attacks" per month, the ALJ did not incorporate those difficulties into her RFC determination); *O'Neal v. Kijakazi*, No. 1:19-CV-225 NAB, 2021 WL 4552167, at *7 (E.D. Mo. Oct. 5, 2021) (remanding with instruction to consider the likelihood of absences or breaks at work related to migraines given the evidence in the record that supported the plaintiff's complaints of disabling pain and the need to lie down to attempt to relieve the migraines).  The Court notes that recent evidence of the frequency and severity of Plaintiff's migraines is varied. *See* Tr. 50 (May 13, 2019: noting 10 headache days per month and 7 migraine days per month, lasting 6-15 hours, and an 85% reduction in headaches since the onset of Botox injections); Tr. 1306-07 (October 3, 2019: Plaintiff saw nurse practitioner complaining of a migraine for 2 days); Tr. 1320 (January 12, 2020: Plaintiff went to urgent care complaining of an 8/10 migraine that started two days ago); Tr. 1348-49 (October 22, 2020: noting 2 migraine days per month, lasting 3-4 hours, and a 75% improvement in headaches); Tr. 1364 (February 4, 2021: noting 5-8 migraines per month and some type of headache 10 days per month, lasting 8-10 hours). Furthermore, the Court agrees with Plaintiff that normal neurological exams are not inconsistent with debilitating migraines.  *See Williams v. Kijakazi*, No. 4:20 CV 1493 DDN, 2022 WL 823062, at *11 (E.D. Mo. Mar. 18, 2022); *Mary D. v. Kijakazi*, No. CV 21-1995 (BRT), 2022 WL 2759117, at *4 (D. Minn. July 14, 2022).

## V.  CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not build a logical bridge between the analysis of the evidence and the ultimate conclusion with respect to the change in the noise limitation.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of September, 2022.

                                                /s/ Noelle C. Collins  
                                               NOELLE C. COLLINS  
                                               UNITED STATES MAGISTRATE JUDGE